FILED

1  SANDRA R. BROWN
   Acting United States Attorney        2017 MAY 23  AM 10: 21
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   DENNISE D. WILLETT
4  Assistant United States Attorney
   Chief, Santa Ana Branch Office
5  SCOTT D. TENLEY (Cal. Bar No. 298911)
   Assistant United States Attorney
6        8000 United States Courthouse
         411 West Fourth Street
7        Santa Ana, California 92701
         Telephone: (714) 338-2829
8        Facsimile: (714) 338-3561
         E-mail:   scott.tenley@usdoj.gov
9
   Attorneys for Plaintiff
10  UNITED STATES OF AMERICA

11                    UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                        SOUTHERN DIVISION  SACR17-00043

14  UNITED STATES OF AMERICA,          No. SA CR 17-

15            Plaintiff,                PLEA AGREEMENT FOR DEFENDANT
                                        ELIZABETH JANE MULDER
16            v.

17  ELIZABETH JANE MULDER,
      aka "Lizzie,"
18
              Defendant.
19

20       1.    This constitutes the plea agreement between ELIZABETH JANE

21  MULDER ("defendant") and the United States Attorney's Office for the

22  Central District of California (the "USAO") in the above-captioned

23  case.  This agreement is limited to the USAO and cannot bind any

24  other federal, state, local, or foreign prosecuting, enforcement,

25  administrative, or regulatory authorities.

26                        DEFENDANT'S OBLIGATIONS

27       2.    Defendant agrees to:

28

1        a.    Give up the right to indictment by a grand jury and,
2   at the earliest opportunity requested by the USAO and provided by the
3   Court, appear and plead guilty to a two-count information in the form
4   attached to this agreement as Exhibit A or a substantially similar
5   form, which charges defendant with wire fraud in violation of 18
6   U.S.C. § 1343, and making and subscribing to a false tax return, in
7   violation of 26 U.S.C. § 7206(1).

8        b.    Not contest facts agreed to in this agreement.

9        c.    Abide by all agreements regarding sentencing contained
10  in this agreement.

11       d.    Appear for all court appearances, surrender as ordered
12  for service of sentence, obey all conditions of any bond, and obey
13  any other ongoing court order in this matter.

14       e.    Not commit any crime; however, offenses that would be
15  excluded for sentencing purposes under United States Sentencing
16  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
17  within the scope of this agreement.

18       f.    Be truthful at all times with Pretrial Services, the
19  United States Probation Office, and the Court.

20       g.    Pay the applicable special assessments at or before
21  the time of sentencing unless defendant lacks the ability to pay and
22  prior to sentencing submits a completed financial statement on a form
23  to be provided by the USAO.

24  3.   Defendant further agrees:

25       a.    Truthfully to disclose to law enforcement officials,
26  at a date and time to be set by the USAO, the location of,
27  defendant's ownership interest in, and all other information known to
28  defendant about, all monies, properties, and/or assets of any kind,

1  derived from or acquired as a result of, or used to facilitate the

2  commission of, defendant's illegal activities, and to forfeit all

3  right, title, and interest in and to such items.

4      b.   To the Court's entry of an order of forfeiture at or

5  before sentencing with respect to these assets and to the forfeiture

6  of the assets.

7      c.   To take whatever steps are necessary to pass to the

8  United States clear title to the assets described above, including,

9  without limitation, the execution of a consent decree of forfeiture

10  and the completing of any other legal documents required for the

11  transfer of title to the United States.

12      d.   With respect to any criminal forfeiture ordered as a

13  result of this plea agreement, defendant waives the requirements of

14  Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice

15  of the forfeiture in the charging instrument, announcements of the

16  forfeiture sentencing, and incorporation of the forfeiture in the

17  judgment.  Defendant acknowledges that forfeiture of the assets is

18  part of the sentence that may be imposed in this case and waives any

19  failure by the Court to advise defendant of this, pursuant to Federal

20  Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts

21  defendant's guilty pleas.

22      e.   Not to assist any other individual in any effort

23  falsely to contest the forfeiture of the assets described above.

24      f.   Not to claim that reasonable cause to seize the assets

25  was lacking.

26      g.   To prevent the transfer, sale, destruction, or loss of

27  any and all assets described above to the extent defendant has the

28  ability to do so.

1        h.    To fill out and deliver to the USAO a completed
2   financial statement listing defendant's assets on a form provided by
3   the USAO.

4        4.    Defendant admits that defendant received $343,496.86 of
5   unreported income for tax year 2015.  Defendant further agrees to
6   cooperate with the Internal Revenue Service in the determination of
7   defendant's tax liability for calendar years 2011 through 2015.
8   Defendant agrees that:

9        a.    Defendant will file, prior to the time of sentencing,
10  amended returns for the years subject to the above admissions,
11  correctly reporting unreported income; will, if requested to do so by
12  the Internal Revenue Service, provide the Internal Revenue Service
13  with information regarding the years covered by the returns; will, in
14  good faith, attempt to pay at or before sentencing all additional
15  taxes and all penalties and interest assessed by the Internal Revenue
16  Service on the basis of the returns; and will, in good faith, attempt
17  to promptly pay all additional taxes and all penalties and interest
18  thereafter determined by the Internal Revenue Service to be owing as
19  a result of any computational error(s).

20       b.    Nothing in this agreement forecloses or limits the
21  ability of the Internal Revenu e Service to examine and make
22  adjustments to defendant's returns after they are filed.

23       c.    Defendant will not, after filing the returns, file any
24  claim for refund of taxes, penalties, or interest for amounts
25  attributable to the returns filed in connection with this plea
26  agreement.

27

28

4

1     d.    Defendant is liable for the fraud penalty imposed by
2  the Internal Revenue Code, 26 U.S.C. § 6663, on the understatement of
3  tax liability for tax years 2011-2015.

4     e.    Defendant gives up any and all objections that could
5  be asserted to the Examination Division of the Internal Revenue
6  Service receiving materials or information obtained during the
7  criminal investigation of this matter, including materials and
8  information obtained through grand jury subpoenas.

9     f.    Defendant will sign closing agreements with the
10 Internal Revenue Service contemporaneously with the signing of this
11 plea agreement, permitting the Internal Revenue Service to assess and
12 collect the total sum of $128,791 for tax year 2015, which comprises
13 the tax liabilities, as well as assess and collect the civil fraud
14 penalty for each year and statutory interest, on the tax liabilities,
15 as provided by law.

16                          THE USAO'S OBLIGATIONS

17     5.   The USAO agrees to:

18          a.   Not contest facts agreed to in this agreement.

19          b.   Abide by all agreements regarding sentencing contained
20 in this agreement.

21          c.   At the time of sentencing, provided that defendant
22 demonstrates an acceptance of responsibility for the offenses up to
23 and including the time of sentencing, recommend a two-level reduction
24 in the applicable Sentencing Guidelines offense level, pursuant to
25 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
26 additional one-level reduction if available under that section.

27          d.   Except for criminal tax violations (including
28 conspiracy to commit such violations chargeable under 18 U.S.C. §

371), not further criminally prosecute defendant for federal crimes arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 17 below, including charges under 18 U.S.C. § 1029 and 18 U.S.C. § 1028A(a)(1). Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

e.    Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 26 or higher and provided that the Court does not depart downward in offense level. For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A, without regard to reductions in the term of imprisonment that may be permissible through the substitution of community confinement or home detention as a result of the offense level falling within Zone B or Zone C of the Sentencing Table.

## NATURE OF THE OFFENSES

6.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: (1) the defendant knowingly devised, participated in, or

1 | executed a scheme or plan to defraud, or a scheme or plan for
2 | obtaining money or property by means of false or fraudulent
3 | pretenses, representations, or promises; (2) the statements made or
4 | facts omitted as part of the scheme were material -- that is, they
5 | had a natural tendency to influence, or were capable of influencing,
6 | a person to part with money or property; (3) the defendant acted with
7 | the intent to defraud -- that is, the intent to deceive or cheat; and
8 | (4) the defendant used, or caused to be used, an interstate wire to
9 | carry out or to attempt to carry out an essential part the scheme.

10 |        7.    Defendant understands that for defendant to be guilty of
11 | the crime charged in count two, that is, making and subscribing to a
12 | false tax return, in violation of Title 26, United States Code,
13 | Section 7206(1), the following must be true: (1) defendant made and
14 | signed a tax return for the year 2015 that defendant knew contained
15 | false information as to a material matter; (2) the return contained a
16 | written declaration that it was being signed subject to the penalties
17 | or perjury; and (3) in filing the false tax return, defendant acted
18 | willfully.  In order to prove that the defendant acted "willfully,"
19 | the government must prove beyond a reasonable doubt that the
20 | defendant knew federal tax law imposed a duty on her, and the
21 | defendant intentionally and voluntarily violated that duty.

22 |                        PENALTIES AND RESTITUTION

23 |        8.    Defendant understands that the statutory maximum sentence
24 | that the Court can impose for a violation of Title 18, United States
25 | Code, Section 1343, is: 20 years' imprisonment; a 3-year period of
26 | supervised release; a fine of $250,000 or twice the gross gain or
27 | gross loss resulting from the offense, whichever is greatest; and a
28 | mandatory special assessment of $100.

9.   Defendant understands that the statutory maximum sentence that the Court can impose for violating Title 26, United States Code, Section 7206(1), is: 3 years' imprisonment; a one-year period of supervised release; a fine of $100,000; and a mandatory special assessment of $100.

10.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 23 years' imprisonment; a three-year period of supervised release; a fine of $350,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

11.   Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.  The parties currently believe that the approximate applicable amount of restitution associated with defendant's wire fraud scheme is $1,538,771.12, but recognize and agree that this amount could change

1  based on facts that come to the attention of the parties prior to
2  sentencing.

3      12.  Defendant understands and agrees that the Court: (a) may
4  order defendant to pay restitution in the form of any additional
5  taxes, interest, and penalties that defendant owes to the United
6  States based upon the count of conviction and any relevant conduct;
7  and (b) must order defendant to pay the costs of prosecution, which
8  may be in addition to the statutory maximum fine stated above.

9          a.  The amount of restitution resulting from defendant's
10 making and subscribing to false tax returns for the years 2011 to
11 2015 is $51,365 for 2011, $101,029 for 2012, $129,431 for 2013,
12 $115,318 for 2014, and $128,791 for 2015.

13     13.  Defendant agrees that restitution is due and payable
14 immediately after the judgment is entered and is subject to immediate
15 enforcement, in full, by the United States.  If the Court imposes a
16 schedule of payments, defendant agrees that the schedule of payments
17 is a schedule of the minimum payment due, and that the payment
18 schedule does not prohibit or limit the methods by which the United
19 States may immediately enforce the judgment in full.

20     14.  If the Court orders the defendant to pay restitution to the
21 IRS for the failure to pay tax, either directly as part of the
22 sentence or as a condition of supervised release or probation, the
23 IRS will use the restitution order as the basis for a civil
24 assessment.  See 26 U.S.C. §6201(a)(4).  The defendant does not have
25 the right to challenge the amount of this restitution-based
26 assessment.  See 26 U.S.C. §6201(a)(4)(C).  Neither the existence of
27 a restitution payment schedule nor the defendant's timely payment of
28 restitution according to that schedule will preclude the IRS from

1  immediately collecting the full amount of the restitution-based
2  assessment, including by levy and distraint under 26 U.S.C. §6331.
3  Interest on the restitution-based assessment will accrue under 26
4  U.S.C. §§ 6601 and 6621 from the last date prescribed for payment of
5  the liability that is the subject of the restitution order to the
6  date that the IRS receives payment.

7       15.  Defendant agrees not to file any claim for refund of taxes,
8  or penalties represented by an amount of restitution paid pursuant to
9  this agreement.

10      16.  Defendant agrees that this agreement, or any judgment,
11 order, release, or satisfaction issued in connection with this
12 agreement, will not satisfy, settle, or compromise the defendant's
13 obligation to pay the balance of any remaining civil liabilities,
14 including tax, additional tax, additions to tax, interest, and
15 penalties, owed to the IRS for the time period(s) covered by this
16 agreement or for any other time period.

17      17.  Defendant understands that supervised release is a period
18 of time following imprisonment during which defendant will be subject
19 to various restrictions and requirements.  Defendant understands that
20 if defendant violates one or more of the conditions of any supervised
21 release imposed, defendant may be returned to prison for all or part
22 of the term of supervised release authorized by statute for the
23 offense that resulted in the term of supervised release, which could
24 result in defendant serving a total term of imprisonment greater than
25 the statutory maximum stated above.

26      18.  Defendant understands that, by pleading guilty, defendant
27 may be giving up valuable government benefits and valuable civic
28 rights, such as the right to vote, the right to possess a firearm,

the right to hold office, and the right to serve on a jury.
Defendant understands that once the court accepts defendant's guilty
plea, it will be a federal felony for defendant to possess a firearm
or ammunition.  Defendant understands that the conviction in this
case may also subject defendant to various other collateral
consequences, including but not limited to revocation of probation,
parole, or supervised release in another case and suspension or
revocation of a professional license.  Defendant understands that
unanticipated collateral consequences will not serve as grounds to
withdraw defendant's guilty plea.

19.  Defendant understands that, if defendant is not a United
States citizen, the felony conviction in this case may subject
defendant to: removal, also known as deportation, which may, under
some circumstances, be mandatory; denial of citizenship; and denial
of admission to the United States in the future.  The court cannot,
and defendant's attorney also may not be able to, advise defendant
fully regarding the immigration consequences of the felony conviction
in this case.  Defendant understands that unexpected immigration
consequences will not serve as grounds to withdraw defendant's guilty
plea.

<center>FACTUAL BASIS</center>

20.  Defendant admits that defendant is, in fact, guilty of the
offenses to which defendant is agreeing to plead guilty.  Defendant
and the USAO agree to the statement of facts provided below and agree
that this statement of facts is sufficient to support pleas of guilty
to the charges described in this agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 17 below but is
not meant to be a complete recitation of all facts relevant to the

<center>11</center>

1  underlying criminal conduct or all facts known to either party that
2  relate to that conduct.

3       Defendant, a resident of Orange County, provides financial
4  consulting services to small business and individuals, including
5  accounting, tax, and bookkeeping services.  Defendant provides these
6  services through Mulder Financial Consulting ("Mulder Financial"), a
7  consulting company under defendant's control.  Defendant and her
8  husband maintain a bank account at Bank of America, account number
9  xxxxx-x1906.  In addition to the Mulder Financial account, defendant
10  and her husband, Jesse Mulder, control a Bank of America account,
11  account number xxxxx-x8120, under the name Mulder Financial and
12  Consulting, d/b/a Income Tax Payments (the "Income Tax Payments
13  account").

14       Beginning no later than in or around July 2009, and continuing
15  to at least in or around May 2016, defendant knowingly and with the
16  intent to defraud, devised and executed a scheme to defraud and
17  obtain money from her clients by means of materially false and
18  fraudulent pretenses, representations, and promises, and the
19  concealment of material facts.

20       To conduct her fraudulent scheme, defendant gained the trust of
21  small businesses and other clients, which in turn allowed her to
22  obtain control or access to financial accounts and/or checking
23  documents of her clients.  Using a variety of fraudulent pretenses,
24  including deceiving clients into making checks payable to defendant's
25  Income Tax Payment account under the belief that the funds would be
26  used to satisfy the clients' legitimate tax obligations, defendant
27  obtained, fraudulently and without authorization, over $1.5 million

28

1   from her victims.  Defendant used her special skills and training in
2   accounting procedures to perpetrate, and then to conceal, her fraud.

3   **A.   JAC Wines**

4        In or around 2009, defendant began performing bookkeeping
5   services for JAC Wines, a start-up wine distributor based in San
6   Clemente, California, owned and operated by J.A.  In May 2012,
7   defendant and J.A. agreed that if defendant caused JAC Wines to be
8   acquired by an investor, defendant would be compensated one-half of
9   the proceeds of the sale.

10       In late 2012/early 2013, J.A. became unable to manage day-to-day
11  financial operations of JAC Wines on account of a serious personal
12  and medical hardship.  Knowing J.A. was particularly susceptible to
13  her fraudulent scheme on account of his medical treatment, defendant
14  sought and obtained power of attorney over JAC Wines financial
15  accounts.  After gaining control over JAC Wines' accounts, defendant
16  created fraudulent invoices and expenses in order to cause J.A. to
17  invest capital into JAC Wines to pay the purported expenses.  After
18  J.A. deposited funds into JAC Wines' account, defendant transferred
19  the money to the Mulder Financial account and converted the money for
20  her own use.  Defendant then provided J.A. fictitious receipts or
21  email messages to show that the purported expense had been paid.

22       To perpetuate her scheme, defendant made material
23  misrepresentations designed to lead J.A. to believe that legitimate
24  investors were considering acquiring JAC Wines.  In particular,
25  defendant created the fictitious persona "Brent Harrison," who
26  purported to be a representative of the Wine Trust, a company that
27  introduces investors to fine wine.  Defendant also created the
28  fictitious persona "Jung Siam," who purported to be a Chinese

1  investor introduced to JAC Wines by "Harrison."  By creating
2  fraudulent email communications between and among defendant, J.A.,
3  "Harrison," and "Siam," defendant led J.A. to believe that the
4  marketing and other expenses J.A. paid were benefiting JAC Wines and
5  furthering a potential acquisition of JAC Wines.  In fact, as
6  defendant well knew, JAC Wines was not being considered as an
7  acquisition target.

8      In total, defendant converted approximately $185,504.11 from JAC
9  Wines for her own use by, among other means, paying checks from JAC
10  Wines to the Mulder Financial account

11      **B.   Kurtz-Ahlers & Associates**

12      Beginning in November 2009, defendant performed part-time
13  bookkeeping services at the rate of $700 per month for Kurtz-Ahlers*
14  Associates ("K-A & Assoc."), a luxury travel agency based in San Juan
15  Capistrano operated by J.K. ("J.K.").

16      Between 2011 and 2016, defendant drafted forty-four checks from
17  the K-A & Assoc. bank account made payable to "Income Tax Payments,"
18  the same name as the d/b/a account controlled by defendant.  When
19  seeking J.K.'s endorsement on the checks, defendant did not disclose
20  that she operated a d/b/a called "Income Tax Payments" or that
21  defendant planned to deposit the checks into an account under
22  defendant's control.  Instead, defendant represented to J.K. that the
23  Income Tax Payments checks were payments for outstanding tax
24  liabilities and would be forwarded to the appropriate federal, state,
25  or local tax authority.  Defendant made fraudulent notations on the
26  memo lines of some checks to further deceive J.K. into believing the
27  checks would be used to satisfy specific tax liabilities.  Defendant
28  then deposited these checks into her Income Tax Payments account, and

1  converted the funds for her own personal use, without authorization
2  from J.K. or K-A & Assoc.

3      In addition to the Income Tax Payments scheme, defendant also
4  fraudulently transferred money from K-A & Assoc.'s bank account to
5  accounts under defendant's control.  For example, via wire transfer
6  on December 29, 2011, defendant transferred $30,000 from K-A & Assoc.
7  to the Mulder Financial account ending in -x8120.  Defendant also
8  wrote checks without authorization from K-A & Assoc. directly to
9  Mulder Financial which defendant deposited in Mulder Financial's bank
10 account, ending in -x8120.  This included a $5,000 check dated August
11 22, 2014 drawn from K-A & Assoc.'s Bank of America account in
12 California ending in -x6285, which defendant deposited into her
13 Mulder Financial account in California.  In order for the transfer of
14 funds to have been effectuated from the K-A & Assoc. account to the
15 Mulder Financial account, a wire transmission was sent through Bank
16 of America servers in Richmond, Virginia, which was reasonably
17 foreseeable to defendant.

18     Defendant also used the fictitious "Harrison" persona to conceal
19 her scheme from K-A & Assoc. and J.K.  For example, when confronted
20 about the $5,000 check described above, defendant claimed the amount
21 was in error, and sent K-A & Assoc. an email from "Harrison"
22 confirming that the $5,000 debit was in error and purporting to stop
23 payment on the check.  In reality, the check was never stopped, and
24 the $5,000 payment was deposited without authorization into the
25 Mulder Financial account.

26     Between January 2011 and May 2016, defendant converted without
27 authorization approximately $777,604.73 from K-A & Assoc. to bank
28

1  accounts under the control of defendant and/or her husband, and
2  converted those funds for defendant's personal use.

3      **C.   Toni & Guy Hair Salon Franchise**

4      Between approximately 2014 and 2016, defendant provided tax and
5  bookkeeping services to a Newport Beach-based franchise of Toni & Guy
6  Hair Salon (GTLF LLC Toni & Guy) ("Toni & Guy"). Toni & Guy provided
7  free services to defendant and her family in exchange for defendant's
8  work.  Through the identical Income Tax Payments scheme described
9  above, defendant converted for her own use approximately $291,286.15
10 from Toni & Guy.  Defendant also used the fictitious "Harrison"
11 persona in furtherance of her fraud -- this time purporting to be a
12 former customer who decided to purchase services from the salon after
13 visiting with defendant and obtaining defendant's recommendation.

14      Defendant's embezzlement caused substantial financial hardship
15 to Toni & Guy and its owners L.S. and G.T.  Because of outstanding
16 tax liabilities and many other unpaid debts caused by defendant, Toni
17 & Guy became insolvent.  L.S. and G.T. were forced to take out a
18 number of loans, including from family members, in order to attempt
19 to keep the business afloat.  L.S. and G.T.'s personal credit have
20 been substantially damaged as a result of the high debt associated
21 with Toni & Guy.

22      **D.   Other Victims**

23      In addition to the monies embezzled from JAC Wines, K-A &
24 Assoc., and Toni & Guy, defendant stole money from the following
25 additional victims:

26      From Bella Pilates, an exercise studio in San Clemente,
27 California operated by L.K., defendant embezzled approximately
28 $201,998.46.  Defendant did so largely through the Income Tax

1  Payments scheme described above.  In addition, defendant used Bella
2  Pilates' American Express account without authorization to pay
3  personal expenses.  Defendant also opened, without authorization, a
4  line of credit in the name of Bella Pilates through Merchant Capital
5  LLC, from which defendant received cash advances.
6      From Andra Builders, Inc., a building contractor located in
7  Costa Mesa, California, defendant embezzled approximately $59,887.76.
8  Defendant did so largely through the Income Tax Payments scheme
9  described above.
10      From California Print to Copy, a copy shop located in Irvine,
11  California, defendant embezzled approximately $22,500.  Defendant did
12  so largely through the Income Tax Payments scheme described above.
13                          *  *  *
14      In total, defendant's fraudulent scheme resulted in her theft of
15  approximately $1,538,771.12 from JAC Wines, K-A & Assoc., Toni & Guy,
16  Bella Pilates, Andra Builders, Inc., and California Print to Copy.
17  Defendant used the money obtained from her fraudulent scheme for a
18  variety of personal and luxury expenses, including a rental home in
19  Laguna Beach, California, cosmetic surgery, personal vacations,
20  living expenses, horse rentals, and the purchase of horse equipment.
21      **E.   False Tax Returns**
22      Between 2011 and 2016, defendant knowingly and willfully signed
23  and filed false tax returns that did not report income defendant had
24  received from her fraudulent conduct.  For example, on or around May
25  21, 2016, defendant knowingly and willfully signed, and on May 22,
26  2016 filed, under penalty of perjury, an IRS Form 1040 which reported
27  that the total income of defendant and her husband, Jesse Mulder, was
28  $76,920, when in fact, as defendant knew, her true joint income was

17

1  substantially higher.  Defendant's true joint income for tax year
2  2013 was $420,416.86, which included $343,496.86 obtained as a result
3  of her fraudulent scheme.

4                              SENTENCING FACTORS

5       21.  Defendant understands that in determining defendant's
6  sentence the Court is required to calculate the applicable Sentencing
7  Guidelines range and to consider that range, possible departures
8  under the Sentencing Guidelines, and the other sentencing factors set
9  forth in 18 U.S.C. § 3553(a).  Defendant understands that the
10  Sentencing Guidelines are advisory only, that defendant cannot have
11  any expectation of receiving a sentence within the calculated
12  Sentencing Guidelines range, and that after considering the
13  Sentencing Guidelines and the other § 3553(a) factors, the Court will
14  be free to exercise its discretion to impose any sentence it finds
15  appropriate up to the maximum set by statute for the crimes of
16  conviction.

17       22.  Defendant and the USAO agree to the following applicable
18  Sentencing Guidelines factors as to Count One:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)(1)] |
| Loss greater than $1.5 million: | +16 | [U.S.S.G. § 2B1.1(b)(1)(I)] |
| Substantial financial hardship: | +2 | [U.S.S.G. § 2B1.1(b)(2)(A)(iii)] |
| Vulnerable victim: | +2 | [U.S.S.G. § 3A1.1(b)(1)] |
| Special skill: | +2 | [U.S.S.G. § 3B1.3] |

25  Defendant and the USAO reserve the right to argue that additional
26  specific offense characteristics, adjustments, and departures under
27  the Sentencing Guidelines are appropriate.  Defendant understands

28

                                    18

1  that there is no agreement as to defendant's criminal history or
2  criminal history category.

3      23.   Defendant and the USAO reserve the right to argue for a
4  sentence outside the sentencing range established by the Sentencing
5  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
6  (a)(2), (a)(3), (a)(6), and (a)(7).

7                  WAIVER OF CONSTITUTIONAL RIGHTS

8      24.   Defendant understands that by pleading guilty, defendant
9  gives up the following rights:

10          a.   The right to persist in a plea of not guilty.

11          b.   The right to a speedy and public trial by jury.

12          c.   The right to be represented by counsel -- and if
13  necessary have the court appoint counsel -- at trial.  Defendant
14  understands, however, that, defendant retains the right to be
15  represented by counsel -- and if necessary have the court appoint
16  counsel -- at every other stage of the proceeding.

17          d.   The right to be presumed innocent and to have the
18  burden of proof placed on the government to prove defendant guilty
19  beyond a reasonable doubt.

20          e.   The right to confront and cross-examine witnesses
21  against defendant.

22          f.   The right to testify and to present evidence in
23  opposition to the charges, including the right to compel the
24  attendance of witnesses to testify.

25          g.   The right not to be compelled to testify, and, if
26  defendant chose not to testify or present evidence, to have that
27  choice not be used against defendant.

28

                              19

1      h.    Any and all rights to pursue any affirmative defenses,
2  Fourth Amendment or Fifth Amendment claims, and other pretrial
3  motions that could be filed.

4                   WAIVER OF APPEAL OF CONVICTION

5      25.  Defendant understands that, with the exception of an appeal
6  based on a claim that defendant's guilty pleas were involuntary, by
7  pleading guilty defendant is waiving and giving up any right to
8  appeal defendant's convictions on the offenses to which defendant is
9  pleading guilty.

10              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

11     26.  Defendant agrees that, provided the Court imposes a total
12  term of imprisonment on all counts of conviction of no more than 78
13  months, defendant gives up the right to appeal all of the following:
14  (a) the procedures and calculations used to determine and impose any
15  portion of the sentence; (b) the term of imprisonment imposed by the
16  Court; (c) the fine imposed by the court, provided it is within the
17  statutory maximum; (d) the amount and terms of any restitution order,
18  provided it requires payment of no more than $1,538,771.12; (e) the
19  term of probation or supervised release imposed by the Court,
20  provided it is within the statutory maximum; and (f) any of the
21  following conditions of probation or supervised release imposed by
22  the Court: the conditions set forth in General Orders 318, 01-05,
23  and/or 05-02 of this Court; the drug testing conditions mandated by
24  18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use
25  conditions authorized by 18 U.S.C. § 3563(b)(7).

26     27.  The USAO agrees that, provided (a) all portions of the
27  sentence are at or below the statutory maximum specified above and
28  (b) the Court imposes a term of imprisonment of no less than 63

months, the USAO gives up its right to appeal any portion of the sentence', with the exception that the USAO reserves the right to appeal the following: (a) the amount of restitution ordered if that amount is less than $1,538,771.12.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

28.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

29.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

30.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant

United States Attorney, knowingly violates or fails to perform any of
defendant's obligations under this agreement ("a breach"), the USAO
may declare this agreement breached.  All of defendant's obligations
are material, a single breach of this agreement is sufficient for the
USAO to declare a breach, and defendant shall not be deemed to have
cured a breach without the express agreement of the USAO in writing.
If the USAO declares this agreement breached, and the Court finds
such a breach to have occurred, then: (a) if defendant has previously
entered guilty pleas pursuant to this agreement, defendant will not
be able to withdraw the guilty pleas, and (b) the USAO will be
relieved of all its obligations under this agreement.

31.  Following the Court's finding of a knowing breach of this
agreement by defendant, should the USAO choose to pursue any charge
or any civil, administrative, or regulatory action that was either
dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of
limitations is tolled between the date of defendant's signing of this
agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on
the statute of limitations, any claim of pre-indictment delay, or any
speedy trial claim with respect to any such action, except to the
extent that such defenses existed as of the date of defendant's
signing this agreement.

c.  Defendant agrees that: (i) any statements made by
defendant, under oath, at the guilty plea hearing (if such a hearing
occurred prior to the breach); (ii) the agreed to factual basis
statement in this agreement; and (iii) any evidence derived from such
statements, shall be admissible against defendant in any such action

22

1  against defendant, and defendant waives and gives up any claim under

2  the United States Constitution, any statute, Rule 410 of the Federal

3  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

4  Procedure, or any other federal rule, that the statements or any

5  evidence derived from the statements should be suppressed or are

6  inadmissible.

7  <center>COURT AND PROBATION OFFICE NOT PARTIES</center>

8      32. Defendant understands that the Court and the United States

9  Probation Office are not parties to this agreement and need not

10  accept any of the USAO's sentencing recommendations or the parties'

11  agreements to facts or sentencing factors.

12      33. Defendant understands that both defendant and the USAO are

13  free to: (a) supplement the facts by supplying relevant information

14  to the United States Probation Office and the Court, (b) correct any

15  and all factual misstatements relating to the Court's Sentencing

16  Guidelines calculations and determination of sentence, and (c) argue

17  on appeal and collateral review that the Court's Sentencing

18  Guidelines calculations and the sentence it chooses to impose are not

19  error, although each party agrees to maintain its view that the

20  calculations in paragraph 22 are consistent with the facts of this

21  case. While this paragraph permits both the USAO and defendant to

22  submit full and complete factual information to the United States

23  Probation Office and the Court, even if that factual information may

24  be viewed as inconsistent with the facts agreed to in this agreement,

25  this paragraph does not affect defendant's and the USAO's obligations

26  not to contest the facts agreed to in this agreement.

27      34. Defendant understands that even if the Court ignores any

28  sentencing recommendation, finds facts or reaches conclusions

<center>23</center>

1   different from those agreed to, and/or imposes any sentence up to the

2   maximum established by statute, defendant cannot, for that reason,

3   withdraw defendant's guilty pleas, and defendant will remain bound to

4   fulfill all defendant's obligations under this agreement.  Defendant

5   understands that no one -- not the prosecutor, defendant's attorney,

6   or the Court -- can make a binding prediction or promise regarding

7   the sentence defendant will receive, except that it will be within

8   the statutory maximum.

9                          NO ADDITIONAL AGREEMENTS

10       35.  Defendant understands that, except as set forth herein,

11  there are no promises, understandings, or agreements between the USAO

12  and defendant or defendant's attorney, and that no additional

13  promise, understanding, or agreement may be entered into unless in a

14  writing signed by all parties or on the record in court.

15  //

16  //

1    <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2    36.   The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
  FOR THE CENTRAL DISTRICT OF

7 CALIFORNIA

8 SANDRA R. BROWN
  United States Attorney

9

10 _____      5/17/17
   SCOTT D. TENLEY         Date

11 Assistant United States Attorney

12 _____      5/15/17
   ELIZABETH JANE MULDER     Date

13 Defendant

14 _____      5/15/17
   KATHERINE T. CORRIGAN    Date

15 Attorney for Defendant ELIZABETH
   JANE MULDER

16

17

18                <u>CERTIFICATION OF DEFENDANT</u>

19    I have read this agreement in its entirety.  I have had enough

20 time to review and consider this agreement, and I have carefully and

21 thoroughly discussed every part of it with my attorney.  I understand

22 the terms of this agreement, and I voluntarily agree to those terms.

23 I have discussed the evidence with my attorney, and my attorney has

24 advised me of my rights, of possible pretrial motions that might be

25 filed, of possible defenses that might be asserted either prior to or

26 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

27 of relevant Sentencing Guidelines provisions, and of the consequences

28 of entering into this agreement.  No promises, inducements, or

KC 5/15/17
EM 5/15/17

1  representations of any kind have been made to me other than those

2  contained in this agreement.  No one has threatened or forced me in

3  any way to enter into this agreement.  I am satisfied with the

4  representation of my attorney in this matter, and I am pleading

5  guilty because I am guilty of the charges and wish to take advantage

6  of the promises set forth in this agreement, and not for any other

7  reason.

8  *Elizabeth Jane Mulder*                    5/15/17

9  ELIZABETH JANE MULDER                       Date
   Defendant

10

11              CERTIFICATION OF DEFENDANT'S ATTORNEY

12      I am Elizabeth Jane Mulder's attorney.  I have carefully and

13  thoroughly discussed every part of this agreement with my client.

14  Further, I have fully advised my client of her rights, of possible

15  pretrial motions that might be filed, of possible defenses that might

16  be asserted either prior to or at trial, of the sentencing factors

17  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

18  provisions, and of the consequences of entering into this agreement.

19  To my knowledge: no promises, inducements, or representations of any

20  kind have been made to my client other than those contained in this

21  agreement; no one has threatened or forced my client in any way to

22  enter into this agreement; my client's decision to enter into this

23  agreement is an informed and voluntary one; and the factual basis set

24  forth in this agreement is sufficient to support my client's entry of

25  guilty pleas pursuant to this agreement.

26

27  KATHERINE T. CORRIGAN                       5/15/17
    Attorney for Defendant ELIZABETH            Date

28  JANE MULDER

                        26

                                    KC 5/15/17
                                    EM 5/15/17

# Exhibit A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>ELIZABETH JANE MULDER,<br> aka "Lizzie,"<br><br>   Defendant. | No. SA CR 17-<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1343: Wire Fraud; 26<br>U.S.C. § 7206(1): Making and<br>Subscribing to a False Tax Return] |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1343]

A. INTRODUCTORY ALLEGATIONS

At all times relevant to this Information:

1. Kurtz-Ahlers & Associates ("K-A & Assoc.") was a company located in San Juan Capistrano, California, that provided marketing, consulting, and booking services for luxury hotels, resorts, and yachts.

2. "J.K.," founder and chief executive officer of K-A & Assoc., held exclusive authority to authorize expenditures on behalf

1  of K-A & Assoc., including as the only authorized signatory to K-A &

2  Assoc. bank checks.

3      3.  Defendant ELIZABETH JANE MULDER, also known as "Lizzie"

4  ("MULDER") owned and operated Mulder Financial Consulting ("Mulder

5  Financial"), a financial services company that provided bookkeeping

6  services.

7      4.  Defendant MULDER controlled a Bank of America bank account

8  ending in 1906, which was held in the name of Mulder Financial, and a

9  Bank of America account ending in 8120, which was held in the name of

10  Mulder Financial and Consulting, d/b/a Income Tax Payments (the

11  "Income Tax Payments account").

12      5.  Beginning in or around November 2008, K-A & Assoc. hired

13  defendant MULDER to provide part-time bookkeeping services at the

14  rate of $700 per month.  In her capacity as a part-time bookkeeper

15  for K-A & Assoc., defendant MULDER was not authorized to sign checks

16  on behalf of K-A & Assoc., or to otherwise cause the payment or

17  transfer of K-A & Assoc. money without authorization from J.K.

18  B.   THE SCHEME TO DEFRAUD

19      6.  Beginning in or around December 2011 and continuing to in

20  or around May 2016, in Orange County, within the Central District of

21  California, and elsewhere, defendant MULDER, knowingly and with the

22  intent to defraud, devised, participated in, and executed a scheme to

23  defraud others, as to material matters, and to obtain money and

24  property from K-A & Assoc., by means of material false and fraudulent

25  pretenses, representations, and promises, and the concealment of

26  material facts.

27  //

28  //

C.   MEANS TO ACCOMPLISH THE FRAUDULENT SCHEME

7.   In carrying out the fraudulent scheme, defendant MULDER, engaged in and caused others to engage in fraudulent and deceptive acts, practices, and devices, including, but not limited to, the following:

a.   Defendant MULDER told J.K. to endorse checks drawn upon K-A & Assoc.'s account made payable to "Income Tax Payments" and represented that the funds would be used to satisfy K-A & Assoc.'s outstanding federal, state, and local tax obligations.

b.   Defendant MULDER deposited the checks into the "Income Tax Payments" account and used the funds for defendant MULDER's personal expenses.

c.   Defendant MULDER made unauthorized transfers of money from K-A & Assoc.'s bank account to bank accounts under defendant MULDER's control, by unauthorized wire transfer and forged check.

d.   When J.K. discovered unauthorized transfers from K-A & Assoc.'s accounts, defendant MULDER attempted to conceal the fraud by telling J.K. that the unauthorized wire transfers were caused by banking errors, when in truth, as defendant MULDER well knew, defendant MULDER intentionally caused the transfers to accounts under her control and used the funds for personal purposes.

8.   By devising and executing the fraudulent scheme, defendant MULDER caused K-A & Assoc. to make payments and transfers of approximately $777,604.73 from K-A & Assoc.'s account to accounts under defendant MULDER's control, which defendant MULDER used for personal expenses including a Laguna Beach, California rental home, cosmetic surgery, personal vacations, living expenses, horse rentals, and the purchase of high-end horse equipment.

3

C.    ITEM WIRED

9.    On or about August 22, 2014, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud, defendant MULDER, transmitted, and caused the transmission of a wire communication through a Bank of America server in Richmond, Virginia effectuating a transfer of $5,000 from a California Bank of America account ending in −x6285 to a California Bank of America account ending in −x8120.

COUNT TWO

[26 U.S.C. 7206(1)]

On or about May 21, 2016, within the Central District of California, and elsewhere, defendant ELIZABETH JANE MULDER, also known as "Lizzie" ("MULDER"), a resident of Laguna Beach, California, willfully made and subscribed to a false United States Individual Income Tax Return, Form 1040, for the calendar year 2015, which was verified by written declaration that it was made under the penalty of perjury, which was filed with the Internal Revenue Service on or around May 22, 2016, and which defendant MULDER did not believe to be true and correct as to every material matter, in that defendant MULDER falsely reported, on line 22 of such form 1040, that the joint total income for her and her spouse for calendar year 2015 was $76,920, when, in truth and in fact, as defendant MULDER then well knew and believed, defendant's joint total income for the calendar year 2015 was substantially higher.

SANDRA R. BROWN
Acting United States Attorney


LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office

JOSEPH T. MCNALLY
Assistant United States Attorney
Deputy Chief, Santa Ana Branch
  Office

SCOTT D. TENLEY
Assistant United States Attorney
Santa Ana Branch Office