Katherine Corrigan, SBN 132226
CORRIGAN WELBOURN & STOKKE,
A PROFESSIONAL LAW CORPORATION
4100 Newport Place, Suite 550
Newport Beach, CA 92660
Telephone: 949-251-0330
Facsimile: 949-251-1181
E-Mail:   kate@cwsdefense.com
Attorney for Defendant, ELIZABETH MULDER

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ELIZABETH MULDER,<br><br>Defendant | Case: SA CR 17-00043-DOC<br><br>DEFENDANT'S POSITION RE: SENTENCING; EXHIBIT A<br><br>Sentencing Date: October 16, 2017<br>Hearing Time: 7:30 a.m. |

**TO THE HONORABLE DAVID O. CARTER, UNITED STATES DISTRICT JUDGE, THE UNITED STATES ATTORNEY'S OFFICE AND ITS ATTORNEY OF RECORD, ASSISTANT UNITED STATES ATTORNEY PAUL LEBLANC AND UNITED STATES PROBATION OFFICER LESLIE DE LA TORRE:**

Defendant ELIZABETH MULDER (hereinafter the "***Defendant***"), by and through counsel of record, Katherine Corrigan, hereby files Defendant's Position Re Sentencing in the above-entitled matter.


DATED: October 2, 2017               ____/s/_____
                                                      Katherine Corrigan
                                                      Attorney for Defendant

1

Defendant's Sentencing Position Memorandum

# I.

# INTRODUCTION

Defendant respectfully submits this memorandum in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. Section 3553(a) in light of *United States v. Booker*, 125 U.S. 738 (2005). After full analysis of the sentencing factors in this case, the information provided by the defense and probation, the Defendant requests that this Court sentence the Defendant to the recommended sentence, namely, to no more than 36 months imprisonment followed be a 3 year period of supervised release, the payment of restitution and special assessments.

The requested sentence is based on the factors cited in this memorandum and are the basis for the variance recommended by probation and requested by the Defendant. Those factors include, but are not limited to, the Defendant's personal history (childhood and upbringing, mental and physical health problems, and history), and the Defendant's participation in counseling while on bond.

The Defendant believes that such a sentence is reasonable in light of the facts of this case, the Defendant's personal history and characteristics, and actions while on pretrial release. The proposed sentence meets the goals of modern sentencing law, as set forth in Title 18 U.S.C. §3553(a) and related case law.

# II.

# PROCEDURAL BACKGROUND AND DEFENDANT'S COMMENTS

## A. *Court Proceedings.*

Prior to making her initial appearance in this case on June 5, 2017, the Defendant had already entered into a plea agreement with the government. From an early stage, she provided information about her role in the offense. This resulted in an early resolution of her case and significant conservation of government resources. She entered her guilty plea on June 12, 2017.

The Defendant is now prepared to be sentenced.

2

### B. *The Plea Agreement*

On May 15, 2017, the Defendant, with the assistance of counsel, entered into a plea agreement with the government in this Case (the "***Plea Agreement***").  The executed Plea Agreement is filed with the Court. The terms and conditions of the Plea Agreement are accurately reflected in the PSR.  (See PSR ¶¶32-66).  On June 12, 2017, the Defendant entered a guilty plea pursuant to the Plea Agreement, and the Court accepted the guilty plea.

The Plea Agreement contemplates a total adjusted offense level of 26:

Base offense level 7 – U.S.S.G. §2B1.1 (a) (1)

Loss Adjustment of + 16 – U.S.S.G. §2B1.1 (b) (1) (I)

Substantial financial hardship–adjustment of +2 – U.S.S.G. §2B1.1 (b) (2) (A) (iii)

Vulnerable Victim:  +2 U.S.S.G. §3A1.1 (b) (1)

Use of Special Skill: +2 U.S.S.G. §3B1.3

Acceptance of Responsibility - -3 – U.S.S.G. §3E1.1

**Total adjusted offense level – 26**

**Criminal History Category I**

The Defendant is not in breach of the Plea Agreement, and has not obstructed justice and has accepted responsibility for the offense conduct (See PSR ¶¶40-41).

The Defendant stands by the terms of the Plea Agreement and asks this Court to make findings that are consistent with the stipulations regarding sentencing factors that are contained in the Plea Agreement.

### C. *Minimum and Maximum Possible Sentence*

The statutory maximum sentence that the Court can impose in this case is 23 years imprisonment, followed by a 3 year period of supervised release, along with fines of up to $3,50,000.00 or twice the gross gain or gross loss resulting from the offenses, and a mandatory special assessment of $200.00.  There is no statutory mandatory

3

1    minimum sentence in this Case.  In addition, the law and the Plea Agreement

2    contemplate the imposition of an order of restitution.

3        **D. *Defendant's Comments Regarding the PSR:***

4        The PSR provides great detail of the Defendant's life and personal history.  As

5    the Court can see from the PSR, the Defendant did not grow up in a "normal"

6    household or environment.  She is one of three children.  Her brother died of a heroin

7    overdose in 2012.  Her childhood is described in the PSR as "unstable and chaotic."

8    That seems to be an understatement.

9        At the age of 6, the PSR discloses to the Court that the Defendant had a horrible

10   event (due to the nature of its description, please refer to PSR ¶79).  In addition, her

11   father suffered from significant mental health disease that he often left un-medicated.

12   He also abused and binge on drugs and alcohol. He used illegal drugs in front of his

13   children. (See PSR ¶80-81, 83).  There were also times that the children were not picked

14   up from school and left with relatives.  (See PSR ¶81-82.)  On one occasion, he locked

15   himself in the bathroom and tried to kill himself by slitting his neck.  The Defendant

16   and her siblings were at home and called for help.  Her father was hospitalized as a

17   result of his suicide attempt.  (See PSR ¶84.)

18       During this time, the Defendant's mother suffered from significant health

19   problems.  The Defendant became responsible for the care of her brothers and father,

20   and made sure that her father took his medications.  (See PSR ¶85.)

21       As the stresses built up, the Defendant turned to food to "self-medicate".  In

22   high school, she weighed 200 pounds, and she started lying to people about her family

23   due to the embarrassment she experiences.  The neighbors had seen the police take her

24   father away from the family home on many occasions, and people gossiped about the

25   family.  The Defendant resorted to lying to people and telling them that everything is

26   OK and that her parents had good jobs.  Her childhood was traumatizing.  She resorted

27   to food, and her brother resorted to drugs (often using with his father) (See PSR ¶87-

28   88). Her weight eventually creeped up to 300 pounds.  (See PSR ¶97.)

4

The Defendant wishes that her mother would have left her father.  She believes that her brother would not have overdosed and died had that choice been made by her mother.  (See PSR ¶90).

The Defendant is married and enjoys her two children.  Despite significant financial and health challenges, and a bankruptcy (due to medical bills), she has tried to maintain a stable environment for her family.

The Defendant's health has been compromised by her out of control weight gain.  In 2007, she underwent gastric bypass surgery and lost about 140 pounds.  However, as a result of the procedure, she has suffered additional health problems, including being severely anemic and in need of monthly iron infusions.  She also takes numerous prescription medications. (See PSR ¶¶97-98.)

The Defendant's mental health status is also compromised.  She suffers from anxiety and a bipolar condition.  When she learned of this investigation, she had thoughts of crashing her car into a wall, but instead, was admitted at a hospital in South Orange County, and remained there for 7 days.  At this time, she was diagnosed with a bipolar condition and prescribed anti-psychotic drugs.  She suffered adverse reactions to the drugs and had to stop taking them.  (See PSR ¶101.)  She attends therapy with a doctor.  (See PSR ¶103.)

After the change of plea hearing occurred, a poster was discovered by her child and the poster had an expletive word written on it.  A few days later, someone carved her husband's paint job on his truck – the carving included numerous expletive words.  These incidents were reported to law enforcement and the government.  (See PSR ¶102.)

The Defendant has some college education and is currently unemployed (she was let go from her employment as a result of this Case.)  (See PSR ¶¶105-111.)

The Defendant has not financial ability to pay a fine or to pay interest on the restitution that the Court will order.  The Defendant requests that the Court order all fines and interest on the restitution waived.  (See PSR ¶¶112-128.)

5

1       According to the PSR, the Defendant has no criminal history, no warrants and no

2   other cases.  She accepted responsibility at a very early stage and she has not obstructed

3   justice.  (See PSR ¶¶40-41, 68-74.)

4       **E.** ***The Sentencing Recommendation Letter.***

5       The Defendant agrees that the probation officer's recommendation of 36 months

6   imprisonment is appropriate and asks that the Court impose a sentence of no more than

7   36 months imprisonment.  The Defendant has no objection to the recommendations

8   relating to the calculation of the restitution, the waiver of fines and interest.  Further, the

9   Defendant has no objection to period of supervised release or the terms and conditions

10  of supervised release.  The conditions are related to the offense conduct and tailored to

11  the Defendant's mental health problems.  There is no recommendation for RDAP

12  because the Defendant does not suffer from substance abuse issues.  In light of her not

13  qualifying for application for RDAP, she will not be eligible to participate in a program

14  that could significantly reduce her actual time in prison.

15      **F.** ***Exhibit A:  Letters to the Court:***

16      Jessie Mulder, the Defendant's husband, has provided a letter for the Court's

17  information.  The letter is a window into the effect that the Defendant's theft has caused

18  the family and others to experience.  It also provides a vivid description of the remorse

19  that the Defendant is experiencing.  It has manifested itself both emotionally and

20  physically.   What is also impactful is the description he provides about the household

21  and how their lives have been completely altered by the Defendant's conduct.  They

22  have 2 young children and they, so far, have been shielded from the effect of the

23  Defendant's offense conduct.  However, he does attend therapy sessions with them and

24  he intends to continue with this process in order to do what he can to protect them.

25      The letter also talks of the vandalism that they have suffered, along with the

26  deterioration of the support network that the family has enjoyed.  Mr. Mulder also tells

27  us about the deterioration of the support system he has enjoyed as a fire fighter.

28

6

Despite these tough issues, he is standing by his wife, and acknowledges that there will be incarceration in this case.

Ms. Palmer also offers the Court insight into who Ms. Mulder is.  She talks about how she has helped her identify and address depression and substance abuse issues relating to the mental health problems she was experiencing during her divorce.

## III.

## POST-BOOKER SENTENCING CONSIDERATIONS
## 18 U.S.C. Sections 3553(a) (1)-(7) Humanization Factors

In light of *United States v. Booker*, 125 U.S. 738 (2005), the sentencing guidelines are advisory and are but one factor to be considered by the Court in fashioning an appropriate sentence, to wit, a sentence that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. Section 3553(a).  The Sentencing Guidelines are only a starting point for the Court in crafting a reasonable sentence.  Indeed, under Section 3553(a), the district courts are required to sentence below the range if such a sentence would be sufficient to achieve the purposes of sentencing.  As a result, the sentencing guideline range is no longer binding on the Court, as the Sentencing Guidelines are merely advisory today and only one of several factors to be considered in determining sentence.  *Booker*, 124 S.Ct. at 764-65.  18 U.S.C. Sections 3553(a) (1)-(7) provide the Court with other factors to include in the fashioning of a reasonable sentence:

1.  the nature and circumstances of the offense and the history and characteristics of the defendant;

2.  the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

7

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced (***the Sentencing Guideline Range***);

5. any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. Section 994(a)(2) that is in effect on the date that defendant is sentenced;

6. the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct; and

7. the need to provide restitution to victim(s) of the offense.

*Id., 18 U.S.C. Sections 3553(a) (1)-(7).*

## IV.

## DEFENDANT'S POSITION RE: SENTENCING FACTORS AS APPLIED TO DEFENDANT

1. **The proposed sentence considers the personal history and characteristic of the Defendant and the nature of the offense.**

The Defendant's personal history and characteristics are clearly outlined in the PSR and are summarized in the preceding pages.  Her upbringing clearly set the stage for the Defendant's actions in this Case.  She is undergoing therapy to assist her in confronting the stresses in her life, and understands that she continuously work to maintain / control her stress levels.  She has not only accepted responsibility for her offense conduct, but she did so at a very early stage.  This is a clear signal that she does not minimize her conduct and she recognizes the seriousness of her offense conduct.

8

According to the PSR, the Defendant has no criminal history, no warrants and no other cases. She accepted responsibility at a very early stage and she has not obstructed justice. (See PSR ¶¶40-41, 68-74.)

**2.    The proposed sentence reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense.**

The proposed sentence of no more than 36 months imprisonment reflects the seriousness of the offense. It will serve to promote respect for the law and provide just punishment. It will send the message that a person who engages in similar conduct will face significant incarceration. As the Defendant's husband's letter illustrates, the sentence in this case will be a stark reminder to all that others suffer significantly as a result of the offense conduct – the victims, family members and the community at large. The ripple effect of cases like this one is significant and often times, a greater punishment impact than incarceration. The letter, which is attached hereto as Exhibit A, provides vivid detail that supports that the requested sentence will reflect the seriousness of the offense, promote respect for the law and provide just punishment.

**3.    The proposed sentence affords adequate specific and general deterrence to criminal conduct.**

The proposed sentence affords both specific and general deterrence to criminal conduct. The Defendant will make the Court aware of her remorse and recognition of the seriousness of the financial and emotional harm she has exacted on her victims. She also recognizes that the offense conduct has left her family in financial ruin and at peril of emotional destruction. She recognizes that her husband's job is dangerous and that, if something should happen to him while she is in custody, she will not be able to be present for him or their 2 young children. There are no other family members that can step in to properly assist should anything bad occur. General deterrence goals are satisfied by the proposed sentence. The message that a significant sentence sends to the

9

public is clear - it is not worth it to engage in any criminal conduct, and in particular, as here, financial crimes.

4. **The proposed sentence protects the public from further crimes of the Defendant.**

The Defendant now knows that her conduct has not only put her in peril of being incarcerated, but it has also destabilized her children's security and her husband's future. This, along with the shame she is experiencing about what she has done to her victims, is excruciating. The terms and conditions of supervised release will preclude the Defendant from re-entering into future similar schemes. There is no turning back time, and undoing what she has done, but if she could, she would. The impact of the Defendant's conduct is a signal that she is not likely to commit any future crimes. Continuing mental health assistance will provide her with the tools to ensure the Court and the public that she is no longer a threat to the public. The terms and conditions of supervised release will ensure that the Defendant will be monitored and her work activities will be scrutinized by probation.

**5.  The Minimally-Sufficient Sentence in the Case**

As discussed above, ***Booker*** and Title 18 of the United States Code Section 3553(a)'s parsimony provision impose a statutory cap on sentences, despite what is recommended or prescribed by the sentencing Guidelines:  the sentence must be "sufficient, but not greater than necessary" to achieve the purposes of punishment. Section 3553(a) (2) provides that the Court shall impose a sentence ***sufficient but not greater than necessary*** to comply with Section 3553(a).

The Defendant respectfully requests that this Court impose a sentence that will permit her to return to society sooner than recommended by the government. The probation officer's sentence recommendation is a reflection of a sentence that is sufficient but not greater than necessary to comply with sentencing law.  A sentence of no more than 36 months, followed by a 3 year period of supervised release adequately addresses the factors this Court must consider in fashioning a sentence in this Case.

10

1    Justice is served by this proposed sentence.  The Defendant understands that the

2    seriousness of her offense conduct.  The message of deterrence has reached the

3    Defendant and she clearly recognizes that her offense conduct not only impacted her

4    life, but impacts the lives of others, particularly those of the victims, her husband and

5    young children. This is not lost on the Defendant.  This Defendant readily

6    acknowledges that she needs to continue to give back to society and make amends.  The

7    proposed sentence achieves the goals of deterrence, incapacitation, and rehabilitation.

8    **V.**

9    **CONCLUSION**

10    In light of the foregoing and the records before the Court, it is respectfully

11    requested that the Court consider the Plea Agreement sentencing factor analysis, the

12    government's motion and sentencing position, this sentencing position, and impose a

13    sentence of no more than 36 months, followed by a 3 year period of supervised release,

14    the payment of restitution and the appropriate special assessment.   The Defendant

15    further requests that the Court waive all fines and interest on the restitution judgement

16    due to lack of financial ability to pay.   She also requests that she be permitted to self-

17    surrender January 12, 2018.

18    The Defendant also requests that the Court recommend – in the following order

19    of priority – that:

20    1.  Defendant be housed by the Bureau of Prisons in the Southern California area

21    due to her ties to maintain proximity to her young family; and

22    2.  Defendant be housed by the Bureau of Prisons facility that will be able to

23    address her ongoing medical issues, namely issues relating to anemia and the

24    need for monthly iron infusions.

25    DATED:  October 2, 2017                    Respectfully submitted,

26    _____/s/_____

27    Katherine Corrigan
     Attorney for Defendant

28

11

Defendant's Sentencing Position Memorandum

**CERTIFICATE OF SERVICE**

I, Katherine Corrigan, declare:

That I am a citizen of the United States and resident or employed in Orange County, California; that my business address is Corrigan Welbourn & Stokke, APLC, 4100 Newport Place, Suite 550, Newport Beach, California 92660; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That on **October 2, 2017**, I caused to be transmitted via facsimile or e-mail to the person(s) below and addressed as follows:

DEFENDANT'S POSITION RE: SENTENCING; EXHIBIT A

on the following persons:


USPO Leslie De La Torre  VIA EMAIL   Leslie_DeLaTorre@cacp.uscourts.gov
United States Probation Department
U.S. Courthouse
411 W. 4th St., Ste. 8500
Santa Ana, CA 92701


This Certificate is executed on **October 2, 2017** at Newport Beach, California.  I certify

under penalty of perjury that the foregoing is true and correct.


Dated:  October 2, 2017                    _____/s/_____
                                                           Katherine Corrigan

12

Defendant's Sentencing Position Memorandum

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT A

Defendant's Sentencing Position Memorandum

September 20, 2017

Judge Carter,

My wife has had an unbelievably tragic childhood. She has sat front row as her family let her and her brothers down over and over again. In that ash arose a very capable, insecure, hard working, loving woman. As a teen she cared for her grandmother on a nightly basis as she slipped deeper and deeper into the hole of dementia. Throughout high school she was a nanny of three young children for many years and helped raise them into capable adolescents. Helping them with homework, fixing their meals, dressing, changing diapers, and so much more.

I only recently have discovered the depths of her traumatic childhood and the ways those experiences have manifested themselves now. Lizzie has always been an extremely loving person who cares deeply about all those around her for better or for worse. She is altruistic with the way she has dedicated herself to helping others even at the expense of her well-being. From the beginning of our relationship she has always looked after me and our kids to the best of her ability. She has sacrificed over and over again to try and provide for our family. She carried a career in horticulture up until recently when the media spotlight was too much for the company to handle and they fired her. We have two young girls aged 11 and 7 years old respectfully. Thankfully our children do not know the tragedy that is currently unfolding. Our kids look to my wife as their rock. She cooks their meals, volunteers in their classes weekly, tries to be everything for them while shielding them from unpleasant outside forces. She lives her life for her family. A family that will greatly be affected by the void her absence will create.

In the last few months as the media has run with the story, we have had our vehicles vandalized, neighbors ostracize us, and any form of support system completely evaporate. Mercifully to this point my kids have been left out of this tornados path. I say that knowing that time will ultimately catch up with us and attempt to pull us apart. I cannot and will not let that happen. I will give my all to protect and make sure my children have a clean slate to make their life their own and not be defined by connection. There is not a day that goes by that Lizzie hasn't shed tears, fought with persistent anxiety attacks, and regret her actions. The thought of eventually leaving her children behind without her hands on involvement makes her physically sick with anguish. She knows she is going to miss what could be the most important time of their lives in terms of development. I only hope I can support my children with what they are about to lose and

be subjected to by their peers. Humiliation comes in many forms and I'm dreading for the treatment of my daughters by their classmates. It's a completely surreal and unfair circumstance they find themselves in but we will manage the best we can.

Hormones, insecurity, and drama seem to be the trade mark of my 11 year old daughters life right row. I'm not a betting man but you can always count on at least one crisis a day with my oldest that having a mother who went through those years and knows how best to deal with them has been invaluable. Your first child is always the great experiment. Not sure what works, what doesn't, or how to even approach some situations. It's a learning process and one that I'm so grateful my wife has been there to lend her personal expertise. My youngest looks up to her mom as the problem solver. Whether it's "my stomach hurts, I don't understand this math problem, or how long is 30 minutes"? Mom is always there to provide an answer, comfort, and love. That is what good mothers are supposed to do. It is something my daughters are going to have to learn how to problem solve more or less on their own. I have planned to take my children once a month to a mental health professional so we can talk about the issues we are about to face head on. Our doctor has given us recommendations on how to best broach this terrible subject in ways they can understand and work through with our help. My kids didn't ask for this, but like so many other things in life, we will have to find a way to navigate through.

I am a Firefighter for the City of Orange. My shifts are a least 24 hours and as wildfires burn I will be called upon to be deployed for up to 21 days at a time. My support network is in tatters due to my loyalty of sticking with my wife. Most friends and some family have abandon us due to what they read about in the media or have heard through the investigation. I gave my word at the alter and swore an oath to the city I pledged to protect. I will not let either down and will give everything I have to see both through. My wife is a loving woman who made terrible mistakes. She owns that and understands the consequences that will be handed down to her. The publics reaction has already took its toll on us and will continue to do so. Time heals but it's a very slow march. We can't be out in public locally due to some reactions from the community that we have been subject to. All local shopping is done by myself because of the anxiety levels my wife feels when out in public she has been approached he complete strangers that saw her on the news and ostracize her. She already suffers from mental illness issues and this amplifies the symptoms. If Lizzie does venture out with me, she sits in the car waiting for my return. Her life has become a sad anxiety filled daily roller coaster of emotions with her constant thought on how she can repay her debt.

I don't think one is ever truly prepared to lose a loved one. I love my wife and know she is a good person who made a terrible mistakes. She has been vilified by many as a terrible person who cared only about herself. This is not the truth. She has done so much for so many without ever looking for a payback. Our marriage has suffered immeasurably. A spouse of a firefighter already has to be a strong person to deal with their significant other being gone for at least 24 hours at a time. I can't come home and solve problems at the

end of the day when working.  Our Spouses have to be heads up and quick on their feet to solve issues on the home front.  I credit these learned skills for helping her keep our family as stable as it could be to this point.  She has instilled a solid work ethic, honesty, and compassion into both of my daughters.  Those traits will serve them well in life.

With that being said, losing my wife will be debilitating for the family she leaves. We will be heart broken to see her side of the bed empty, her chair at my kids sports missing, and her reassuring hug on a tough day gone.  She cannot be replaced in any way or any form.  We all love her greatly and will suffer immensely without her in our daily lives.  I say a prayer that my kids will be able to find their way through this storm.  I will worry constantly about their well being as well as my wife's while gone.  I am the sole income now to provide a roof over my kids heads, food in their bowls, and the therapy they will need.  The money that it will take to travel to see my wife during visitation will be needed in other areas at home.  Again, support for my children will be priority.

It is with much sadness that I ask you to think about my children when sentencing their mother, my wife.  She is extremely remorseful for the trauma caused in peoples lives. She raised her hand and took responsibility for her actions she has a plan and commitment to repay her debts. The sentencing provides us a bookend of certainty when informing our children of their mothers destination and time to serve.  I have urged her to change someone's life for the better while she serves her time in reflection for the failings she caused.  Lizzie understands there is punishment for what she has done and accepts that.  She is humbled and disgusted with what she did.

I just ask that no one forgets there are two little girls who need their mother in their lives. They will ultimately be the biggest victims and will carry this tragedy with them the rest of their lives.

With Much Respect,


Jesse Mulder

*Chelsea Pavlina Palmer*

I am writing this letter on behalf of Elizabeth Jane Mulder. I have known Liz since 2007 when we were next door neighbors in Laguna Niguel. We became close friends and have been since. She was an extreme source of support emotionally during my divorce which was a very difficult time in my life. We were very close as were our children. They played together daily and we shared dinners and time together whenever possible. Around fall of 2009 I started having issues with depression and anxiety. I started self-medicating and Liz was the only person that would stand up to me and help me. Even my family did not see it. I would not be alive right now if it weren't for her. I could go on and on but bottom line is this woman does not have maliciousness in her. She made some mistakes and now she is ready to take responsibility. I am so grateful for what she has done for me. I now have my daughter, work for the Navy and play tennis religiously. This is a new life for me.

Liz has always been an over achiever and also a people pleaser. I believe that is what has driven her to this point. I understand this doesn't always pay off in a positive way but her actions were always with good intentions or just being overwhelmed with work and family.

She is a friend who doesn't ask for anything in return. Again, it is apparent she is accused of some crimes that she will be going to prison for. I would just like to say she is a woman who made mistakes. Her husband is a fireman and she has two beautiful and bright children who will be well taken care of while she is away but the impact will be detrimental to her family so I am asking for mercy in this case.


Your consideration and leniency for this defendant is truly appreciated.


Sincerely,


Chelsea Palmer